FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 15, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GERALD RUSSELL,<br><br>                              Plaintiff,<br><br>        v.<br><br>GC SERVICES LIMITED PARTNERSHIP,<br><br>                              Defendant. | NO:  2:19-CV-273-RMP<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PREVAILING PARTY COSTS AND ATTORNEY'S FEES IN PART; ORDER GRANTING DEFENDANT'S PETITON FOR AN AWARD OF COSTS; ORDER DENYING PLAINTIFF'S MOTION FOR AN ORDER TO PRODUCE |

BEFORE THE COURT is Plaintiff's Motion for Attorney Fees, ECF No. 85, Defendant's Motion for an Award of Costs, ECF No. 87, and Plaintiff's Motion for an Order Directing Defendant to Produce an Accounting of Defendant's Fees, ECF No. 96.  The Court has considered the briefing, the record, and is fully informed.

**BACKGROUND**

This action arises from a debt Plaintiff Gerald Russell allegedly owed to Sprint.  In May and June of 2019, Defendant GC Services Limited Partnership ("GC Services"), a debt collection company, contacted Mr. Russell on behalf of Sprint to

ORDER GRANTING PLAINTIFF'S MOTION FOR PREVAILING PARTY COSTS AND ATTORNEY'S FEES IN PART ~ 1

1  collect the contested debt.  ECF No. 62 at 2.  Mr. Russell received four telephone

2  calls and one letter from GC Services regarding the purported debt between May 23,

3  2019, and June 5, 2019.  *Id.*  The June 5th telephone call was placed after Mr.

4  Russell had provided GC Services with the name and phone number of his attorney

5  representing him in his action against Sprint.  ECF No. 32 at 10–15.  Thereafter, Mr.

6  Russell filed suit claiming that GC Services' actions violated the Fair Debt

7  Collection Practices Act ("FDCPA") and Washington Consumer Protection Act

8  ("WCPA").  Mr. Russell sought injunctive relief, emotional distress damages in the

9  amount of $10,000, and treble damages in the amount of $25,000 under Washington

10  law.  *See* ECF No. 2 at 15–17.

11       On October 16, 2019, GC Services served an offer of judgment pursuant to

12  Fed. R. Civ. P. 68 to Mr. Russell in the amount of $4,000 inclusive of attorney's fees

13  and costs.  ECF No. 88 at 10–11.  The First Offer of Judgment ("First Offer") did

14  not admit liability.  *Id.*  GC Services also indicated its intent to petition the Court for

15  fees and costs if Mr. Russell ultimately recovered less than the amount offered in the

16  First Offer.  *Id.*  Mr. Russell did not accept the First Offer.

17       On November 7, 2019, GC Services served a second offer of judgment

18  pursuant to Fed. R. Civ. P. 68 to Mr. Russell in the amount of $2,000, plus Mr.

19  Russell's reasonable attorney's fees and costs.  ECF No. 88 at 14–15.  The Second

20  Offer of Judgment ("Second Offer") also did not admit liability.  *Id.*  GC Services

21  again indicated its intent to petition the Court for fees and costs if Plaintiff ultimately

recovered less than the amount offered in the Second Offer.  *Id.*  Mr. Russell did not accept the Second Offer.

On April 21, 2020, the parties submitted a Joint Stipulation in which Mr. Russell agreed to dismiss the state law claims with prejudice and GC Services agreed to not contest liability on the FDCPA claim.  ECF No. 56.  The parties stipulated that GC Services pay Mr. Russell $1,000, the maximum amount of damages permitted under the FDCPA for an individual plaintiff.  *See* 15 U.S.C. § 1692k(a)(2)(A); ECF No. 56.  The Court entered judgment as to liability on Mr. Russell's FDCPA claim under 15 U.S.C. §§ 1692c(a)(2), 1692d, and 1692f.  ECF No. 76.  GC Services moved for partial summary judgment as to Mr. Russell's actual damages for alleged emotional distress and lost time under the FDCPA.  ECF No. 61.  The Court granted the motion dismissing actual damages, finding that a reasonable juror could not find in Mr. Russell's favor based on the evidence provided.  *See* ECF No. 82.

Mr. Russell now moves for an award of attorney's fees and costs, as the prevailing party on the FDCPA claim.  Mr. Russell seeks $1,425.20 in costs and $96,652.50 in attorney's fees.  ECF No. 85.  The latter amount represents 184.1 hours of work performed at $350.00 per hour for a total of $64,435.  *Id.*  Mr. Russell argues this amount should be adjusted upward by a multiplier of 1.5.  *Id.*  GC Services moves for costs pursuant to Fed. R. Civ. Pro. 68 since Mr. Russell recovered less than those amounts offered by GC Services in the previous Offers of

1  Judgment.  ECF No. 87.  In response, Mr. Russell moves for an Order directing GC

2  Services to produce an accounting of its fees.  ECF No. 96.

3  <center>**LEGAL STANDARD**</center>

4         A debt collector that violates the FDCPA is liable "in the case of any

5  successful action . . . [for] the costs of the action, together with a reasonable

6  attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3).  An award of

7  fees is mandatory but must be reasonable.  *See* 17 U.S.C. § 505; *see Camacho v.*

8  *Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

9         The Court calculates an award of attorney's fees using the lodestar method.

10  *Camacho,* 523 F.3d at 978 (citing *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145,

11  1147–48 (9th Cir. 2001)).  The "lodestar" is calculated by multiplying the number of

12  hours the prevailing party reasonably expended on the litigation by a reasonable

13  hourly rate.  *Camacho*, 523 F.3d at 978 (citing *Ferland*, 244 F.3d at 1149 n. 4).

14  Generally, the lodestar figure is presumptively a reasonable fee award.  *See Ferland*,

15  244 F.3d at 1149, n. 4.

16         The district court has discretion to adjust the lodestar upward or downward

17  using a multiplier that reflects "a host of reasonableness factors," known as the *Kerr*

18  factors.  *Stetson v. Grissom*, 821 F.3d 1157, 1166–67 (9th Cir. 2016) (citing *Kerr v.*

19  *Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).  These factors include:

20  (1) the time and labor required, (2) the novelty and difficulty of the questions

21  involved, (3) the skill requisite to perform the legal service properly, (4) the

ORDER GRANTING PLAINTIFF'S MOTION FOR PREVAILING PARTY
COSTS AND ATTORNEY'S FEES IN PART ~ 4

preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr*, 526 F.2d at 70.

A plaintiff who rejects a Rule 68 offer and recovers less by litigating the case is not entitled to collect post-offer attorney's fees if the relevant fee statute treats attorney's fees as part of "costs." *See Costa v. Nat'l Action Fin. Servs.*, 2008 WL 1925235 at *2 (E.D. Cal. Apr. 30, 2008) (citing *Marek v. Chesney,* 473 U.S. 1, 8–9 (1985)). "However, where Congress defines costs and attorney's fees separately, attorney's fees are not necessarily subject to the cost-shifting provision of Rule 68." *Costa*, 2008 WL 1925235 at *2. The FDCPA defines attorney's fees and costs separately. 15 U.S.C. § 1692k(a)(3). Accordingly, attorney's fees in a FDCPA action are not subject to the cost-shifting provision triggered by the rejection of a Rule 68 offer. *See Haworth v. State of Nevada,* 56 F.3d 1048, 1051 (9th Cir. 1995).

In order to be awarded fees after rejecting a Rule 68 offer, counsel's actions in continuing to prosecute the case must have been reasonable. *See Haworth*, 56 F.3d at 1052; *see also Costa*, 2008 WL 1925235 at *2. The Court must consider "(1) the amount of the Rule 68 offer; (2) the stage of litigation at which the offer was made; (3) what services were rendered thereafter; (4) the amount obtained by judgment;

and (5) whether it was reasonable to continue litigating the case after the Rule 68 offer was made." *See Haworth*, 56 F.3d at 1052.

## DISCUSSION

### I.    Mr. Russell's Attorney's Fees and Costs

**Fees Incurred After Offers of Judgment**

Mr. Russell asserts that his request for an award of fees in the amount of $96,652.50 is reasonable because Mr. Russell was seeking and received a judgment as to liability against GC Services.  Although an award of attorney's fees may greatly exceed the actual damages recovered in FDCPA actions, it is a known risk that refusal of a Rule 68 offer may have a substantial impact on the amount of attorney's fees awarded.  *Compare Civitello v. First Credit Am., LLC*, 2007 LEXIS 46620 (N.D. Cal. Feb. 14, 2007) (plaintiff awarded $3,240.80 in actual and statutory damages, and $98,924 in attorney's fees where defendant did not make a Rule 68 offer of judgment) *with Costa*, 2008 WL 1925235 (limiting award to reasonable attorney's fees incurred before defendant made a Rule 68 offer of judgement which plaintiff rejected).

As a preliminary matter, Mr. Russell contends that the Offers made by GC Services were void because GC Services "threatened" to seek "fees."  GC Services included the following language at the end of both Offers of Judgment:

> If Plaintiff ultimately recovers less than this Offer of Judgment, pursuant to Federal Rule of Civil Procedure 68(d), Defendant will petition the Court for its applicable *fees and costs* incurred in this proceeding.

ECF No. 88 at 10–11; 14–15 (emphasis added).  Contrary to Mr. Russell's interpretation, the Court finds that this language does not amount to a "baseless threat."  In fact, all offers made pursuant to Rule 68 are "threatening" to some extent because "[the] Rule uses the threat of the burden of costs in order to facilitate its purpose of encouraging the pretrial settlement of litigation."  *See Solomon v. Onyx Acceptance Corp.*, 222 F.R.D. 418, 420 (C.D. Cal. 2004).  Here, both Offers clearly state that any future action would be made pursuant to Fed. R. Civ. P. 68.  Pursuant to Fed. R. Civ. P. 68, GC Services could seek recovery of its costs in the event that Mr. Russell rejected the offer and ultimately did not obtain a more favorable judgment.  Although GC Services' intent to seek fees was not well-founded in Fed. R. Civ. P. 68(d), it was not legally baseless.  *See* 15 U.S.C. § 1692k(a)(3) (if plaintiff brings an FDCPA action and loses, the Court is permitted to award reasonable attorney's fees to defendant if the action "was brought in bad faith and for the purpose of harassing the defendant.").  Furthermore, that language does not render the entire Offer void; the ramifications of accepting or rejecting the Offers were collateral to the Offers' material terms.  The terms of both Offers, explicitly made pursuant to Fed. R. Civ. P. 68, were unambiguous.

As set forth above, in determining the reasonableness of an attorney's fees award post-Rule 68 offer, the court must consider: (1) the amount of the Rule 68 offer; (2) the stage of the litigation at which the offer was made; (3) what services were rendered thereafter; (4) the amount obtained by the judgment; and (5) whether

it was reasonable to continue litigation after the Rule 68 offer was made. *Haworth*, 56 F.3d at 1052–53.

The Court analyzes the first and fourth factors together for comparative purposes. In the First Offer, GS Services offered Mr. Russell $4,000 inclusive of fees and costs. ECF No. 88 at 10–11. Assuming *arguendo* that Mr. Russell's counsel was awarded $5,810 in fees for all 16.6 hours billed by October 16, 2019, at a rate of $350, that total exceeded the $4,000 offered. However, in the Second Offer, GC Services offered Mr. Russell $2,000, double the statutory maximum ultimately recovered, in addition to reasonable attorney's fees and costs. *See* 15 U.S.C. § 1692k(a)(2) (capping damages in an action by an individual at $1,000); ECF No. 88 at 14–15. Since the amount offered in the Second Offer is double that ultimately obtained by Mr. Russell, in addition to reasonable fees and costs, the first and fourth factors weigh against awarding Mr. Russell fees incurred after he rejected the Second Offer.

Second, the First and Second Offer were made early in the litigation of this case. The First Offer was made on October 16, 2019, and the Second Offer was made on November 7, 2019, before either party had engaged in substantial discovery or motion practice. At the outset, GC Services communicated a willingness to settle, but not admit liability. *See* ECF No. 93-2. Mr. Russell responded that "settlement discussions would be fruitless" and that it would be best for GC Services' counsel to "place this case in your trial stack." *Id.* When the Offers were made, there was one

ORDER GRANTING PLAINTIFF'S MOTION FOR PREVAILING PARTY COSTS AND ATTORNEY'S FEES IN PART ~ 8

1    pending motion before the Court.  *See* ECF No. 4 (Plaintiff's Motion for Judgment

2    on the Pleadings), withdrawn at ECF No. 9.  According to Mr. Russell's counsel's

3    billing records, 16.6 hours of work were performed before the First Offer was

4    received, and 27.7 hours of work were performed before the Second Offer was

5    received.  ECF No. 85-8; *see Costa*, 2008 WL 1925235 at *3 (16 hours of work were

6    performed pre-Rule 68 offer).  Thus, the second factor also weighs against awarding

7    attorney's fees incurred post-offer.

8         Third, as to what services were rendered after the Offers were rejected, Mr.

9    Russell's counsel's billing records show significant discovery and motion practice.

10   After the Second Offer, approximately 156.4 hours of work were performed at a cost

11   of $54,740.  After the Second Offer, Mr. Russell made multiple motions that were

12   subsequently withdrawn.  *See* ECF No. 17 (withdrawn at ECF No. 22); ECF Nos.

13   26, 27, 38 (withdrawn at ECF No. 44).  Although extensive discovery and motion

14   practice generally weighs in favor of an award of fees, it is not persuasive if the

15   work performed was not justified.  *See Costa*, 2008 WL 1925235 at *4.

16        The fifth factor, whether it was reasonable to continue litigating the case after

17   the Offers were made, is the most important factor in determining the reasonableness

18   of an award of attorney's fees.  *See id*.  Here, the Court finds it was reasonable for

19   Mr. Russell to refuse the First Offer of $4,000 because it was inclusive of fees and

20   costs.  *See Younger v. Michael & Assocs.*, *P.C.*, 2014 WL 1760827 (N.D. Cal. Apr.

21   30, 2014) ("it was reasonable for plaintiff to decline such an offer because it would

ORDER GRANTING PLAINTIFF'S MOTION FOR PREVAILING PARTY
COSTS AND ATTORNEY'S FEES IN PART ~ 9

1  have left him without the ability to apply to the Court for the fees incurred in the

2  process of moving for attorney fees, that is, so-called "fees-on-fees"); *see also*

3  *Camacho*, 523 F.3d at 981 ("time spent in establishing the entitlement to and amount

4  of the fee is compensable").  However, the terms of the Second Offer excluded

5  reasonable fees and costs thereby allowing Mr. Russell to apply to the Court for an

6  award of reasonable fees, as well as "fees-on-fees."  Thus, the issue is whether it was

7  reasonable for Mr. Russell to continue litigating his claims after the Second Offer.

8      Mr. Russell argues that the judgment obtained as to liability is "substantially

9  more valuable" than the Second Offer denying liability because the former could

10  cost Defendant its collection license in Washington state.  *See* RCW

11  19.16.120(4)(h); *see also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015,

12  1033 (9th Cir. 2012) (finding that class action suit, despite resulting in an award of

13  nominal damages, was significant because it spurred debt collector to abandon

14  unlawful practice).  However, "[j]ust because a plaintiff has an [FDCPA] violation

15  in [his] pocket does not give [him] a license to go to trial, run up the attorney fees

16  and then recover them from the defendant."  *Haworth*, 56 F.3d at 1052.  As noted

17  above, there is a known risk that refusal of a Rule 68 offer, "may have a substantial

18  adverse impact on the amount of attorney fees [plaintiff] may recover for services

19  rendered after a settlement offer is rejected."  *Id.*  Furthermore, Mr. Russell

20  ultimately did not have enough evidence to substantiate his claim for actual damages

21  under the FDCPA.  ECF No. 82.  Thus, the Court finds that it was not reasonable to

continue to litigate this case after the Second Offer. *See Paz v. Portfolio Recovery Assoc., LLC*, 924 F.3d 949 (7th Cir. 2019) (limiting award to fees incurred before plaintiff rejected defendant's Rule 68 offer where plaintiff ultimately obtained a judgment as to liability and $1,000 in statutory damages).

Accordingly, upon considering the five factors, the court will only award reasonable attorney's fees incurred before November 7, 2019, when the Second Offer was made.

**Fees Incurred Before the Second Offer of Judgment**

As discussed above, the court finds the hours expended by Mr. Russell's counsel after the Second Offer were unreasonable in light of GC Services' Second Offer of Judgment. Therefore, the Court must assess the reasonableness of attorney's fees for work performed before November 7, 2020. The Court must calculate awards for attorney's fees using the "lodestar" method. *Ferland*, 244 F.3d at 1149 n. 4. "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996).

**A. Hours Expended**

First, the Court may award fees only for hours reasonably expended and related to the successful claim. The Court should also consider whether the requested hours are "excessive, redundant, or otherwise unnecessary or unreasonable in light of the issues involved." *Hensley v. Ecerkhart*, 461 U.S. 424, 434 (1983).

According to counsel's billing records, Mr. Russell's counsel billed 27.7 hours of work before Mr. Russell received the Second Offer.  ECF No. 85-8.  From this total, the Defendants persuasively argue that the following hours should be deducted:

1. **2.4 hours** drafting the amended complaint on August 23–24, 2019.  The First Amended Complaint filed in this Court is identical to the Complaint initially filed in state court, and thus redundant.  *Compare* ECF No. 2 *with* ECF No. 1-1 at 4–20.

2. **0.8 hours** for seven entries of clerical tasks including mailing, service, and filing.  *See Mendoza v. Brewster School Dist. No 11*, 469 F.Supp.2d 905, 915 (E.D. Wash. 2006) ("Purely clerical tasks are not recoverable at attorney or paralegal rates). Thus, the Court deducts 0.1 hours from time entered on each of the following dates.  *See* ECF No. 85-8.

    a. July 5, 2019 (entered fee agreement with client)

    b. July 6, 2019 (mailing)

    c. August 20, 2019 (waiver of service of process)

    d. August 24, 2019 (file amended complaint)

    e. September 24, 2019 (file motion to strike)

    f.  September 25, 2019 (file wavier of service)

    g. October 17, 2019 (file reply)

    h. November 6, 2019 (mailing)

ORDER GRANTING PLAINTIFF'S MOTION FOR PREVAILING PARTY COSTS AND ATTORNEY'S FEES IN PART ~ 12

3. **1.8 hours** for email communications.  Some email correspondence relates to scheduling the Rule 26 Conference, which is clearly administrative. Other entries related to email correspondence "are bereft of detail regarding the sender/recipient of the email and the substantive nature of the communication."  *See Miller v. Schmitz*, 2017 WL 633892 at *8 (E.D. Cal. Feb. 15, 2017) (excluding hours for email communications merely described as "Email re: Scheduling Order.").  Thus, the Court deducts time entered on each of the following dates.  *See* ECF No. 85-8.

    a.  0.1 hours on August 14, 2019 (emails re: removal)

    b.  0.2 hours on August 16, 2019 (emails re: removal)

    c.  0.1 hours on August 19, 2010 (emails re: removal)

    d.  0.2 hours on September 25, 2019 (email request for 26 Conference)

    e.  0.1 hours on September 26, 2019 (email response re: 26 Conference)

    f.  0.1 hours on October 3, 2019 (email re: rescheduling 26 Conference)

    g.  0.1 hours on October 24, 2019 (email response re: discovery)

    h.  0.5 hours on October 28– 29, 2019 (emails re: discovery and settlement)

    i.  0.1 hours on October 31, 2019 (disseminate settlement email to defendant)

    j.  0.1 hours on November 1, 2019 (emails re: Joint Status Report)

    k.  0.1 hours on November 5, 2019 (emails re: Joint Status Report)

1    l.   0.1 hours on November 6, 2019 (emailed discovery requests)

2    GC Services argues that the time related to Mr. Russell's Motion for Judgment

3    on the Pleadings on Defendant's affirmative defense, ECF No. 4, should be excluded

4    because that Motion was subsequently withdrawn by Mr. Russell, ECF No. 9.  *See*

5    *Jones v. Colvin*, 2013 WL 3490630 at *6 (W.D. Wash. June 28, 2013) (where

6    counsel's work on one claim is unrelated to his work on another claim, "work on

7    [the] unsuccessful claim cannot be deemed to have been 'expended in pursuit of the

8    ultimate result achieved.'").  The Court finds the motion at that juncture was related

9    to the ultimate result and will not exclude the related labor from the fee award.

10    Accordingly, the labor reasonably expended prior to the Second Offer,

11    adjusted to exclude redundant, clerical, and administrative tasks, totals 22.7 hours.

12    Mr. Russell's counsel allegedly incurred an additional 13.8 hours drafting the

13    present motion, the most time he spent on any task in this litigation.  ECF No. 85-8

14    at 9.  Counsel expended, on average, 4.76 hours drafting other motions filed in this

15    matter and by his own admission, has litigated hundreds of consumer cases.  *See*

16    ECF Nos. 85-1, 85-8.  The Court finds 13.8 hours for this task excessive and adjusts

17    it downward to 6.9 hours, bringing the overall total to 29.6 hours.

18    **B. Hourly Rate**

19    Second, in determining a reasonable rate, the court considers the "experience,

20    skill and reputation of the attorney requesting fees." *Trevino v. Gates*, 99 F.3d 911,

21

924 (9th Cir. 1996). The court also considers "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

The lawyer seeking attorney's fees has the burden to produce "satisfactory evidence, in addition to the affidavits of counsel, that the requested rates are in line with those prevailing in the community." *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). "Declarations filed by the fee applicant do not conclusively establish the prevailing market rate." *See Adsit v. Dundrum, LLC*, 2019 WL 1270937 at *2 (E.D. Wash. March 19, 2019) (finding counsel's affidavit declaring the reasonableness of his requested rate was insufficient and upholding rate of $375 for class action lawsuit after submission of additional documentation). However, in the absence of local data establishing a relevant community rate, case law and market studies can establish a reasonable rate. *See Elliot v. Takhar Collection Servs., Ltd.*, 2013 WL 3884029 at *4 (E.D. Wash. July 26, 2013); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008) (the Court "can certainly consider the fees awarded by other judges in the same locality in similar cases.").

Mr. Russell's counsel, Robert W. Mitchell, submits to the Court that his "reasonable hourly rate is this community is $350 per hour." ECF No. 85-1 at 7. GC Services argues that the Court should award a rate of $285 per hour because Mr. Mitchell has failed to provide affidavits of other comparable attorneys.

Mr. Mitchell failed to provide affidavits from other attorneys who practice in the Eastern District of Washington to support the reasonableness of his $350 hourly

ORDER GRANTING PLAINTIFF'S MOTION FOR PREVAILING PARTY COSTS AND ATTORNEY'S FEES IN PART ~ 15

rate.  Rather, he cites to case law where a reasonable rate of $300 was awarded for an individual plaintiff's suit arising under the FDCPA.  ECF No. 85 at 19–20 (citing *Elliot*, 2013 WL 3884029 *4) (counsel in *Elliot* was unable to secure affidavits from other practicing attorneys, but the court was satisfied that "Plaintiff's counsel's skill, experience, and reputation warrant a fee of $300 per hour.").  Mr. Mitchell took an identical approach in 2015 in *Chase v. Delta Management Assoc., Inc.*, providing only his own affidavit and citing to *Elliot* in support.  ECF No. 95-8 at 9–10.  The Court found that an hourly rate of $250 was reasonable based on affidavits from local attorneys which were secured by the defendants.

In his reply, Mr. Mitchell provides the Court with a Judgment entered in 2019 in Pierce County Superior Court where he obtained $131, 393.60 in costs and fees.  ECF No. 95-6.  However, the Judgment does not set forth counsel's alleged rate of $350.  *Id.*  Mr. Mitchell also directs the Court to *Dustin v. Meridian Financial Servs., Inc.* where Mr. Mitchell was awarded fees at an hourly rate of $350.  ECF No. 95-7; 2017 WL 3773714 (W.D. Wash. Aug. 31, 2017).  Although the suit is analogous in so far as it also asserted violations of the Washington State Consumer Act, Mr. Mitchell was awarded fees for drafting the motion for remand and reply brief arising from a frivolous removal action by defendants.  *See Dustin*, 2017 WL 3773714 at *4.  GC Services timely removed this matter.  ECF No. 1.  Furthermore, the court's order in *Dustin* does not detail what evidence was before the court in awarding fees at a $350 hourly rate.  2017 WL 3773714 *4.

ORDER GRANTING PLAINTIFF'S MOTION FOR PREVAILING PARTY
COSTS AND ATTORNEY'S FEES IN PART ~ 16

Upon considering the analogous case law initially offered by Mr. Mitchell in support of his fee, in addition to the straightforward issues presented by this case commenced by an individual plaintiff, the Court finds that a rate of $300 per hour is reasonable. *See Elliot*, 2013 WL 3884029 at *4.

**C. Lodestar Amount and Multiplier**

The lodestar amount for Mr. Mitchell is $ 8,880 (29.6 x $300). This lodestar figure is presumed to be a reasonable fee award. *See Camacho*, 523 F.3d at 978. Mr. Russell claims that this case warrants a 1.5 multiplier due to the contingent nature of the case, the results obtained, and the complexity of the issues. ECF No. 85 at 23.

Where a fee-shifting statute is involved, such as here, a contingency multiplier does not apply. *See Langley v. GEICO Ins. Co.*, 2017 WL 1682584 at *4 (E.D. Wash. Apr. 5, 2017) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)) (finding that a contingency multiplier would "likely duplicate in substantial part factors already subsumed in the lodestar."); *see also Chuong Van Pham v. City of Seattle, Seattle City Light*, 151 P.3d 976, 983 (Wash. 2007) ("While we presume that the lodestar represents a reasonable fee, *occasionally* a risk multiplier will be warranted because the lodestar figure does not adequately account for the high risk nature of a case.") (emphasis added). This matter was neither "high risk" nor complex. Mr. Russell, by his own admission, argues that GC Services' statutory

violations were "patently obvious" so as to minimize the risk of proceeding on a contingency basis in a matter that presented straightforward issues.

Mr. Russell argues that a 1.5 multiplier is justified because of the outstanding result achieved. Mr. Russell initially sought (1) statutory damages under the FDCPA in the amount of $1,000; (2) actual damages of $10,000 arising from the alleged FDCPA violation; (3) actual damages of up to $25,000 under the Washington Consumer Protection Act; and (4) various forms of injunctive relief. ECF No. 2 at 15–17. The Court entered an order of summary judgment against Mr. Russell, dismissing his claims for actual damages under the FDCPA. ECF No. 82.

Ultimately, Mr. Russell obtained statutory damages in the amount of $1,000 in exchange for an admission of liability under the FDCPA from GC Services. Although this is a favorable result, it is not "extraordinary." *See Paz*, 924 F.3d at 955 (finding district court did not abuse its discretion in limiting fees to those incurred before defendant's Rule 68 offer where plaintiff received judgment on the merits). If Mr. Russell would have accepted either Rule 68 offer, such acceptance would have resulted in a judgment against GC Services despite GC Services' disclaimer of liability. As the Seventh Circuit observed in *Paz,* "[t]he moment such a judgment hit the district court's docket, the prior disclaimer of liability would have been a dead letter." *Id*. Thus, judgment as to liability under the FDCPA is not such an "extraordinary" result so as to justify multiplying the fee award upward.

Accordingly, the Court declines to apply a 1.5 multiplier to the award of attorney's fees.  Mr. Russell is entitled to $ 8,880 in attorney's fees.

**Plaintiff's Costs**

Mr. Russell incurred $79.50 in costs prior to November 7, 2019, when the Second Offer was made.  ECF No. 85-8 at 9 (Service of Process Fee).  Pursuant to Fed. R. Civ. P. 68, "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."  Mr. Russell was offered $2,000 plus reasonable fees and costs on November 7, 2019.  Had Mr. Russell accepted the Second Offer, he would have received double what was actually awarded, in addition to reasonable fees and costs.

Accordingly, as a result of rejecting the Second Offer, the cost shifting provision applies.  Mr. Russell is thereby barred from recovering the costs for counsel's hotel and the deposition transcript, both of which were incurred after the Second Offer was made.  *Id.*; *see e.g.*, *Costa,* 2008 WL 1925235 at *2.

## II.    Defendant's Costs

**Plaintiff's Motion for an Order Directing Defendant to Produce an Accounting of Defendant's Fees**

Mr. Russell moves the Court for an order directing GC Services to produce an accounting of its fees because GC Services made "fees" a material term of both Rule 68 offers.  ECF No. 96.  First, as previously discussed, GC Services' statement of intent to seek "fees and costs" if Mr. Russell ultimately recovered less, as opposed to just "costs," was not a material term to either Offer.  Second, both Offers clearly

ORDER GRANTING PLAINTIFF'S MOTION FOR PREVAILING PARTY COSTS AND ATTORNEY'S FEES IN PART ~ 19

state that any future action would be made pursuant to Fed. R. Civ. P. 68, clarifying what action could be taken pursuant to the law and apprising Mr. Russell of the same.  Finally, GC Services has not moved the Court to recover its fees; it has moved to recover its costs and provided the relevant evidence related to those costs. ECF No. 87.  Thus, GC Services' attorney's fees are not relevant to this Court's decision in awarding fees or costs to either party.  Accordingly, the Court will not require GC Services to produce an accounting of its fees.

**Defendant's Costs**

GC Services claims to have incurred $2,522.70 in costs subsequent to Mr. Russell's refusal of the Second Offer.  ECF No. 88 at 18–28 (costs in the amount of $1,864.45); ECF No. 86-1 at 7 (costs related to Motion for Partial Summary Judgment in the amount of $658.25).  This total includes the costs associated with GC Services' successful Motion for Partial Summary Judgment, ECF No. 61, in the amount of $658.25.  ECF Nos. 86, 86-1 at 7.

"Although the district court normally has discretion under Fed. R. Civ. P. 54(d)[1] as to whether to award costs to the prevailing party, where a Rule 68 offer is made and the judgment finally obtained by the plaintiff is not more favorable than the offer, he must pay the costs incurred after the asking of the offer." *Liberty Mut.*

---

[1] Although there is presumption in favor of awarding costs to the prevailing party, the rule "vests a district court with discretion to deny costs." *Criscuolo v. Grant Cty.*, 2014 WL 14818300 *at 1 (E.D. Wash. Apr. 14, 2014) (citing *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247 (9th Cir. 2014)).

ORDER GRANTING PLAINTIFF'S MOTION FOR PREVAILING PARTY COSTS AND ATTORNEY'S FEES IN PART ~ 20

*Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 442 (9th Cir. 1982).  "Under Rule 68, if a plaintiff rejects a defendant's offer of judgment, and the judgment finally obtained by plaintiff is not more favorable than the offer, the plaintiff *must* pay the costs incurred subsequent to the offer."  *United States v. Trident Seafoods Corp.*, 92 F.3d 855, 859 (9th Cir. 1996) (emphasis added).  "The award is mandatory; Rule 68 leaves no room for the court's discretion."  *Id.*

Here, Mr. Russell recovered one-half less than the amount GC Services offered Mr. Russell on November 7, 2019.  Thus, the cost-shifting provision of Rule 68 applies.  Since GC Services incurred those costs related to the Motion for Partial Summary Judgment after Mr. Russell rejected the Second Offer, they fall within Fed. R. Civ. P. 68's cost-shifting provision.[2]

Whereas a plaintiff who has an FDCPA violation in his pocket does not have a license to go to trial, run up the attorney fees, and the recover them from defendants, the Court finds that this logically extends as a matter of fairness to a defendant who has made an offer of judgment with terms that are likely more favorable than the ultimate result given the statutory cap on damages; this too does not give defendants a license to run up the costs incurred.  *See Haworth*, 56 F.3d at 1052.

---

[2] In the event the Court did not award it costs pursuant to Fed. R. Civ. P. 68, GC Services claims it would have been entitled to seek recovery of those costs related to its successful Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 54(d)(1) and E.D. Wash. LR 54, subject to the Court's discretion.  Thus, GC Services itemized those costs separately.  ECF No. 86-1.

ORDER GRANTING PLAINTIFF'S MOTION FOR PREVAILING PARTY COSTS AND ATTORNEY'S FEES IN PART ~ 21

1    Here, based on the only evidence presented to the Court, it is unclear as to

2    why GC Services incurred a $750 hourly charge for the "editing transcript of Eric

3    John Gates" (ECF No. 88, Ex. 7 at 26), in addition to the $576.45 for a certified

4    transcript (ECF no. 88, Ex. 6), the $25.00 for a condensed transcript (*Id.*), and the

5    $204 for a copy of the transcript (ECF No. 88, Ex. 7).  Furthermore, the record is

6    blank regarding how "Franz Bakery" was relevant to the current matter so as to

7    require service of a subpoena duces tecum to its Corporate Office on March 9, 2020,

8    at a cost of $125.  ECF No. 88 at 18.  Accordingly, absent further explanation, the

9    Court will deduct $875 from the amount of costs alleged:  $750 for the hourly charge

10   of "editing" the transcript and $125 for the service of the subpoena duces tecum. .

11   If GC Services wants the Court to reconsider the exclusion of these specific

12   costs, it shall provide the Court with a further explanation and evidence to

13   substantiate these costs no later than two weeks from the date this Order is filed.

14   Therefore, GC Services is entitled to recover $1,647.70 in costs pursuant to

15   Fed. R. Civ. P. 68.  Accordingly, **IT IS HEREBY ORDERED**:

16   1.  Plaintiff's Motion for Prevailing Party Costs and Attorney's Fees, **ECF**

17       **No. 85**, is **GRANTED IN PART.**

18       a.  Plaintiff is entitled to attorney's fees in the amount of $8,880.

19       b.  Plaintiff is entitled to costs in the amount of $79.50.

20   2.  Defendant's Petition for an Award of Costs, **ECF No. 87**, is **GRANTED**

21       **IN PART**.

ORDER GRANTING PLAINTIFF'S MOTION FOR PREVAILING PARTY
COSTS AND ATTORNEY'S FEES IN PART ~ 22

    a.  Defendant is entitled to costs in the amount of $1,647.70.

    b.  This total represents the costs pursuant to Fed. R. Civ. P. 68 and incurred by GC Services after the Second Offer of Judgment was made ($1,864.45) and the costs associated with its Motion for Partial Summary Judgment, ECF No. 61, ($658.25) minus those costs which the Court found were not substantiated by the evidence as presented ($875).

    c.  Defendant may submit additional evidence for the Court to reconsider the excluded costs no later than **October 28, 2020**.

3.  Plaintiff's Motion for an Order Directing Defendant to Produce an Accounting of Defendant's Fees, **ECF No. 96**, is **DENIED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, provide copies to counsel and **close the case**.

**DATED** October 15, 2020.

                          *s/ Rosanna Malouf Peterson*
                         ROSANNA MALOUF PETERSON
                          United States District Judge